UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DEVIN JAMES-RICHARD CRIPPIN,

        Plaintiff,

v.

UNKNOWN STRICKLAND et al.,

        Defendants.
_____/

Case No. 1:23-cv-1277

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Hicks, Walker, Gage, French, Quiggle, and Unknown Parties #1, #2, #3, #4, #5, #6, and #7. Plaintiff's Eighth Amendment claims against Defendants Strickland for use of the air rifle to subdue Plaintiff and Plaintiff's Eighth Amendment claim against Defendant Armio for leaving Plaintiff hog-tied in the holding cell for several hours will remain in the case.

**Discussion**

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Sergeant Unknown Strickland, Lieutenant Unknown Armio, Corrections Officer Unknown French, Corrections Officer Unknown Party #1, and Corrections Officer Unknown Quiggle in their official and personal capacities. Plaintiff sues Defendants Lieutenant Unknown Hicks, and Corrections Officers Unknown Walker and Unknown Gage in their official capacities only. Finally, Plaintiff sues Defendants Corrections Officers Unknown Parties #2-#7 solely in their personal capacities. (ECF No. 1, PageID.2–4.).

Plaintiff alleges that on an unspecified date, between 5:00 pm and 6:00 pm, Plaintiff held his arm in his door food slot and asked to speak to the shift commanding officer.[1] Plaintiff was told "no." (ECF No. 1, Page ID.5.) Plaintiff then asked Defendant Strickland if he could see the Captain or Lieutenant and was told "I'm all you['re] getting." (*Id.*) Defendant Unknown Party #1 subsequently told Plaintiff that he was just the messenger, but that if Plaintiff did not remove his arm from the food slot, they were going to make him wish that he had. (*Id.*) Plaintiff told him that he needed to see the Captain or Lieutenant and after Defendant Unknown Party #1 walked away, Plaintiff covered his window, holding the food slot. (*Id.*) Plaintiff denies ever threatening, attacking, or lashing out at any other inmate or member of staff. Defendant Gage yelled up at

---

[1] This practice is commonly known as taking one's food slot hostage. An inmate takes his food slot "hostage" by preventing it from being closed, typically by placing his hand or arm in the slot. *See, e.g., Earby v. Ray*, 47 F. App'x 744, 745 (6th Cir. 2002). It is against prison rules and a common form of prisoner misbehavior. *Annabel v. Armstrong*, No. 1:09-cv-796, 2011 WL 3878379, at *4 n.5 (W.D. Mich. Mar. 30, 2011), *report and recommendation adopted* 2011 WL 3878385 (W.D. Mich. Aug. 31, 2011).

Plaintiff that he was a stupid f**k. (*Id.*) Then Defendants Strickland and Unknown Parties #2–#7 came to Plaintiff's cell door and removed the food cart from the area. These Defendants then threw a canister of mace into Plaintiff's cell. Less than two minutes later, Defendants proceeded to use a large hip canister of orange sticky coating mace to spray Plaintiff's eyes, nose, ears, and mouth less than a foot away. (*Id.*) Another two minutes later, Defendants threw a third canister into Plaintiff's cell through the bottom door slot. Then after about five more minutes, Plaintiff felt four excruciating bursts of extreme pain in his left hand and fingers. Plaintiff states that Defendant Strickland used an air powered rifle and Plaintiff could feel "a chunk of his middle finger being blown off and dislocating the bones in his hand." (*Id.*)

Plaintiff states that at this point, he retracted his hand and arm and began complying with all commands. Plaintiff was cuffed, bent forward, and walked backwards to the B-wing showers, where he was allowed to shower. However, Plaintiff was made to put on the same contaminated clothing afterwards. While Plaintiff was dressing, Defendant Armio approached Plaintiff and said, "We can do this all day if you want." (*Id.* at PageID.5-6.) Plaintiff replied, "Bet we for sure can." (*Id.* at PageID.6.) Defendant Armio stated, "Alright stand on your word." (*Id.*) Plaintiff said he would and was then "hog tied" and placed in a holding cell. (*Id.*) Plaintiff showed medical his hand and requested more "extensive medical help." (*Id.*) Plaintiff was then left in the cell for three and a half hours, during which he was not allowed water or use of the bathroom. Plaintiff was then removed from restraints and escorted back to his cell, which was still covered in mace. Plaintiff asked Defendants Unknown Party #1, Unknown Walker, and Unknown French for cleaning supplies and clean bedding, but was ignored. (*Id.*)

Based on the foregoing, it appears that Plaintiff is asserting that Defendants violated his Eighth Amendment rights. Plaintiff seeks "retribution" for the physical and mental trauma he was

3

forced to endure, as well as $100,000.00 in damages plus medical expenses and court costs. (*Id.*, PageID.7.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

4

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Although Plaintiff does not expressly identify which of his constitutional rights was infringed, the Court will consider Plaintiff's allegations as an attempt to state an Eighth Amendment claim for excessive use of force with respect to the Defendants involved in addressing Plaintiff's food slot misbehavior and an Eighth Amendment claim for unconstitutional conditions of confinement during the time Plaintiff spent in the holding cell and after he returned to his own cell.

### A. Official Capacity Claims

Initially, the Court notes that Plaintiff does not specifically seek injunctive or declaratory relief in this case, but only seeks monetary relief. Defendants are entitled to immunity with respect to Plaintiff's official capacity claims for damages. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1988). Therefore, Plaintiff's official capacity claims are subject to dismissal. Moreover, as noted above, Plaintiff sues Defendants Hicks, Walker, and Gage solely in their official capacities. Therefore, Plaintiff's claims against Defendants Hicks, Walker, and Gage are properly dismissed in their entirety.

### B. Eighth Amendment Excessive Use of Force

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment also prohibits conditions of confinement which, although not physically

5

barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id*.

Plaintiff's claims must be analyzed under the Supreme Court authority limiting the use of force against prisoners. The analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34, 36–39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6–7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

Prisoners holding food slots hostage is a common problem. The use of force to compel compliance is common too. The Sixth Circuit has noted that "the question of the degree of force

6

used by the prison guard is analytically distinct from the question of whether [the prisoner] violated prison rules by keeping his hand in the food slot . . . ." *Nelson v. Sharp*, No. 96-2149, 1999 WL 520751, at *2 (6th Cir. July 14, 1999). Put differently, the fact that an inmate holds his food slot hostage does not necessarily justify any possible use of force; as examples, the Sixth Circuit described "hacking off the offending hand with an ax, or spraying the cell with sub-machine gun fire through the food slot." *Id*. But the fact that the use of force can be excessive does not mean that every use of force is excessive.

In this instance, Plaintiff alleges the use of force, and he seeks recompense for the consequences, but he does not allege facts to support a claim that every use of force was excessive. In fact, based on Plaintiff's allegations, three attempts to mace Plaintiff over a period of several minutes did not even convince him to surrender the food slot.

"[T]he use of mace to control a prison inmate is not malicious or sadistic" *per se*. *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002); *Jennings v. Peiffer*, 110 F. App'x 643, 646 (6th Cir. 2004); *Miller v. Palmer*, No. 99-2352, 2000 WL 1478357 (6th Cir., Sep. 27, 2000). Indeed, several courts, including this one, have suggested that the use of means other than direct physical confrontation, such as chemical agents or stun guns, is preferable. *See, e.g., Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992); *Soto v. Dickey*, 744 F.2d 1260, 1262 (7th Cir. 1984); *Alspaugh v. Dahl*, No. 2:07-cv-136, 2008 WL 4425813, *1 (W.D. Mich. Sep. 26, 2008).

Of course, to continue to spray a person after he or she has been incapacitated could certainly be excessive. *See, e.g., Abdur-Rahim v. City of Columbus, Ohio*, 825 F. App'x 284, 287 (6th Cir. 2020) (citing cases). But that is not what Plaintiff alleges happened here. He continued to defy the officers and refused to comply with their directions, choosing instead to keep his arm in

7

the food slot. The Sixth Circuit considered, and rejected, an Eighth Amendment claim like Plaintiff's in *Brown v. Perez*, No. 16-2558, 2017 WL 3378994 (6th Cir. Apr. 17, 2017):

> We have found that the use of a chemical agent does not constitute malicious or sadistic punishment in violation of the Eighth Amendment if its use is reasonably necessary to subdue a noncompliant prisoner. *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) ("the use of mace to control a prison inmate is not malicious or sadistic"); *see also, e.g., Davis v. Agosto*, 89 F. App'x 523, 526 (6th Cir. 2004) (the use of mace was not malicious or sadistic where prisoner refused to comply with a direct order and remained recalcitrant). . . . Even more, the use of tear gas in a closed cell, in light of Brown's refusals to comply, the officers' efforts to temper the situation and warn of the impending use of tear gas, and the temporary nature of Brown's injuries, does not violate the Eighth Amendment. *See Jabaar v. Kruger*, 1995 U.S. Dist. LEXIS 22905, at *6–7 (W.D. Mich. July 5, 1995) (citing *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). Indeed, it is not unreasonable for the jail officials to conclude that the use of a chemical agent is less dangerous for all involved than a hand to hand confrontation." *See Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992) ("If [there] is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force."). Even when viewed in the light most favorable to Brown, the facts indicate that the defendants used a chemical agent and restraints on Brown in a "good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6–7. Brown admittedly refused to come out of his cell despite repeated requests by prison officials to do so. Because of Brown's noncompliance with the defendants' orders, the defendants were compelled to apply a chemical agent. When Brown continued to defy the defendants' orders by refusing to leave his cell despite use of the chemical agent, the defendants were further compelled to use physical restraints to detain Brown and remove him from his cell. In this context, the defendants did not act maliciously or sadistically by using a chemical agent or restraints to secure Brown's compliance after he had repeatedly refused a direct order. *See Combs*, 315 F.3d at 557; *Kennedy*, 37 F. App'x at 757.

*Brown*, 2017 WL 3378994, at *2; *see also Jennings*, 110 F. App'x at 645–46 (6th Cir. 2004) (court concluded multiple uses of a chemical agent was not malicious or sadistic where the prisoner continued to participate in "ongoing obstreperous behavior").

Plaintiff allegations disclose a legitimate penological justification for the use of force: Plaintiff was holding his food slot hostage. If Plaintiff had alleged that pepper spray was used to restore order without warning, or used beyond the extent necessary to restore order, it might invite further inquiry into whether the chemical spray was used maliciously and sadistically. But

8

Plaintiff's allegations do not support the inference that the use of chemical spray was disproportionate or inappropriate in any way. Plaintiff acknowledges that the officers did not use mace until "[a]fter verbal commands." (Compl., ECF No. 1, PageID.5.) And police did not continue to use chemical agent after Plaintiff eventually complied. For those reasons, the Court concludes that Plaintiff has failed to state an Eighth Amendment excessive force claim against Defendants Strickland or Unknown Parties #2, #3, #4, and #5 for the use of chemical spray.

The question is certainly closer with regard to Defendant Strickland's use of an "air powered rifle," (Compl., ECF No. 1, PageID.5.) Plaintiff alleges that the use of the rifle resulted in several excruciating bursts of pain, part of his middle finger being blown off, and dislocated bones in his hand. (*Id.*) It is noteworthy that only after use of the rifle did Plaintiff pull his hand and arm in and comply with all verbal commands. (*Id.*) The use of the rifle, however, strays much closer to "hacking off the offending hand with an ax, or spraying the cell with sub-machine gun fire through the food slot. *Nelson*, 1999 WL 520751, at *2. Plaintiff's allegations regarding Strickland's use of the air rifle support an inference that the use of force may have been excessive. Accordingly, at this early stage of the proceedings, the Court cannot dismiss Plaintiff's Eighth Amendment excessive force claim against Defendant Strickland regarding his use of the air rifle to subdue Plaintiff.

### 2. Defendant Armio

Plaintiff claims that after he was allowed to shower to remove the chemical agent, Defendant Armio told Plaintiff, "We can do this all day if you want." (ECF No. 1, PageID.5-6.) Plaintiff responded by saying, "Bet we for sure can." (*Id.* at PageID.6.) Defendant Armio stated, "Alright stand on your word." (*Id.*) Plaintiff alleges that following his exchange with Defendant

Armio, he was "hog tied" and placed in a holding cell for three and a half hours, during which he was not allowed water or use of the bathroom. (*Id.*)

Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346. The Court notes that the Sixth Circuit has found that placing an inmate in painful restraints for 12 hours, without penological justification, during which he was unable to sit or lie down, missed one meal, and did not have access to water or a toilet, rose to the level of an Eighth Amendment violation. *Barker v. Goodrich*, 649 F.3d 428, 435 (6th Cir. 2011) (citing *Hope v. Pelzer*, 536 U.S. 730 (2002) (finding an Eighth Amendment violation in the handcuffing of a prisoner to hitching post for seven hours in the hot sun without access to water). Based on the allegations in Plaintiff's complaint, there does not appear to have an obvious penological justification for keeping Plaintiff hog-tied while in the holding cell. Although a period of three and a half hours is significantly less than the twelve hours noted by the Court in *Barker*, being hog-tied for such a period without a clear penological reason implicates the Eighth Amendment. Therefore, Plaintiff's Eighth Amendment claim against Defendant Armio is not subject to dismissal on initial review.[2]

### 3. Defendants French and Unknown Party #1

After spending three and a half hours hog-tied in a holding cell, Plaintiff was removed from restraints and escorted back to his cell, which was still covered in mace. Once Plaintiff was placed back in his cell, he requested cleaning supplies and clean bedding, but his request was ignored by Defendants Unknown Party #1 and Defendant French. (ECF No. 1, PageID.6.) Plaintiff does not

---

[2] Plaintiff also asserts that while in the holding cell, Plaintiff showed medical his hand and requested more "extensive medical help." (ECF No. 1, PageID.6.) However, Plaintiff does not assert that he did not receive the requested medical treatment at any point, that any of the named Defendants prevented him from receiving medical treatment, or that he suffered any injuries because of a denial of medical treatment.

specify how long he was deprived of cleaning supplies and bedding. Nor does he allege that he suffered any ill-effects as a result of this deprivation.

The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

To prevail on an Eighth Amendment claim, Plaintiff must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555. The court must

11

determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Plaintiff's scant allegations against Unknown Party #1 and Defendant French do not support the inference that Plaintiff was incarcerated under conditions posing a substantial risk of serious harm nor do they support the inference that these Defendants were aware of such a risk and disregarded it. The Court concludes that Plaintiff's conclusory allegations of unconstitutional conduct against Defendants French and Unknown Party #1 fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

### 4. Defendants Quiggle

Finally, the Court notes that Plaintiff fails to specifically mention Defendant Quiggle in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir.

2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Because Plaintiff fails to even mention Defendant Quiggle in the body of his complaint, his allegations fall far short of the minimal pleading standards under Federal Rule of Civil Procedure 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Hicks, Walker, Gage, French, Quiggle, and Unknown Parties #1, #2, #3, #4, #5, #6, and #7 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claim against Defendant Strickland for use of the air rifle to subdue Plaintiff and his Eighth Amendment claim against Defendant Armio for leaving Plaintiff hog-tied in the holding cell for several hours, remain in the case.

An order consistent with this opinion will be entered.

Dated:     March 27, 2024              /s/ Robert J. Jonker
                                                               Robert J. Jonker
                                                               United States District Judge